IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

**CHARLES W. POST**,

    Plaintiff,

v.

**VENSURE EMPLOYER SEVICES, INC.**, an Arizona corporation,
**THE ALLIANCE GROUP, INC.**, a Nebraska corporation, and
**MICHAEL S. MAPES**, individually,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

The Plaintiff, Charles "Billy" Post ("Post" or "Plaintiff"), by and through his undersigned counsel at HKM Employment Attorneys LLP, as his Complaint and Jury Demand against the Defendants, Vensure Employer Services, Inc. ("Vensure"), an Arizona corporation; The Alliance Group, Inc. ("Alliance"), a Nebraska corporation; and Michael S. Mapes ("Mapes"), individually (collectively, "Defendants"), states as follows:

**NATURE OF ACTION**

    1.    The Plaintiff is employed by Alliance, which is owned by Vensure. Alliance was owned and managed by Mapes until December 31, 2021, when Vensure bought the company and assumed its wage obligations to the Plaintiff.

    2.    The Defendants violated the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA"), by failing to pay Post wages and compensation that he earned through January

1

2022. The Plaintiff estimates that the total wages and compensation due to him are currently $37,253.00.

3. In accordance with the CWA, Post sent Vensure written demands seeking the payment of his wages and compensation on September 9, 2022 and October 4, 2022. Vensure received the demands, but has not tendered the wages and compensation due to Post. Accordingly, Vensure is currently liable for statutory penalties under C.R.S. § 8-4-109 of $36,377.50.

4. At all times relevant to this Complaint, the Defendants knew or should have known the requirements of the CWA but failed to comply with those requirements. As such, the Defendants' violations were willful as a matter of law.

5. Vensure violated Section 8-2-113 of the Colorado Revised Statutes ("Section 8-2-113"), which prohibits employers from presenting to any worker a restrictive covenant that is "broader than reasonably necessary to protect the employer's legitimate interest in protecting trade secrets." C.R.S. § 8-2-113(2)(d), (8)(a).

6. The Plaintiff seeks a declaratory judgment, back wages, mandatory statutory penalties under C.R.S. § 8-4-109(3)b), additional penalties under C.R.S. § 8-4-109(3)(c), a penalty of $5,000.00, reasonable attorneys' fees, and costs based on the Defendants' violations of Colorado law. *See* C.R.S. §§ 8-4-109(3), 8-4-110; *see also* C.R.S. § 8-2-113(8)(b).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because complete diversity exists among the parties and because the amount in

controversy exceeds $75,000.00.

8.  Venue is proper in this Court under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this matter occurred in this District and because Section 8-2-113 requires that Post's claim under that statute be adjudicated in the State of Colorado. *See* 28 U.S.C. 1391(b)(2); *see also* C.R.S. § 8-2-113(6), (7).

## PARTIES

9.  The Plaintiff is a citizen of Colorado who resides at 3600 E. Nobles Road, Centennial, Colorado 80122.

10. At all times relevant to this Complaint, the Plaintiff was an "employee" and a "worker" subject to the protections of Colorado law. *See* C.R.S. § 8-4-101(5); C.R.S. § 8-2-113(6).

11. Defendant Vensure is an Arizona corporation with its principal office at 2600 W. Geronimo Place, #100, Chandler, Arizona 85225.

12. At all times relevant to this Complaint, Vensure was an "employer" subject to the requirements and prohibitions of Colorado law. *See* C.R.S. § 8-4-101(6); 29 U.S.C. § 203(d).

13. Defendant Alliance is a Nebraska corporation with its principal office at 2566 Leavenworth Street, Omaha, Nebraska 68105.

14. At all times relevant to this Complaint, Alliance was an "employer" subject to the requirements and prohibitions of Colorado law. *See* C.R.S. § 8-4-101(6); 29 U.S.C. § 203(d).

15. Defendant Mapes is an individual who resides in Nebraska. On information

and belief, Mapes may be found at 2566 Leavenworth Street, Omaha, Nebraska 68105.

16. At all times between January 1, 2020 and December 31, 2021, Mapes was an "employer" as defined by the CWA.[1]

## **FACTUAL ALLEGATIONS**

17. Post incorporates the allegations in the paragraphs above as if fully set forth herein.

18. Vensure is an Arizona corporation that provides human resources, payroll, and employee benefits services to companies throughout the United States.

19. Alliance is a Nebraska corporation that also provides human resources, payroll, and employee benefits services to companies throughout the United States.

20. At all times between June 2011 and December 31, 2021, Mapes was the owner and manager of Alliance, and he exercised significant control over the company, its operations, and its employees.

21. At all times between June 2011 and December 31, 2021, Mapes had the power to hire and fire Alliance employees.

22. At all times between June 2011 and December 31, 2021, Mapes supervised

---

[1] Effective January 1, 2020, the CWA was amended so that the term "employer" includes not only the company for which an employee works, but also any person acting on behalf of that company who exercises "operational control." *See* C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act,' 29 U.S.C. sec. 203(d)"); see also 29 U.S.C. § 203(d) ("'Employer' means any person acting directly or indirectly in the interest of an employer in relation to an employee"). Courts deciding whether a person qualifies as an "employer" under this standard examine whether they: (1) have the power to hire and fire; (2) supervise and control employees' work; (3) determine wage rates and methods of payment; and (4) maintain employee records. *Inniss v. Rocky Mountain Inventory, Inc.*, 385 F. Supp. 3d 1165, 1168 (D. Colo. 2019); *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 1181, 1189-90 (D. Colo. 2012).

Alliance employees, including Post.

23. During that time, Mapes was the ultimate decision-maker to whom Post reported on all matters related to his work for Alliance.

24. At all times between June 2011 and December 31, 2021, Mapes had the authority to determine the wage rates and methods of payment for Alliance employees. Mapes exercised this authority when he determined what Post would be paid.

25. On information and belief, Mapes also maintained Alliance employee records throughout the period that he owned the company.

26. On May 24, 2011, Mapes hired Post to work for Alliance as a Branch Manager in Colorado.

27. On that date, Post and Mapes executed a written employment agreement ("Agreement"), which is attached to this Complaint as **Exhibit 1**.

28. Under the Agreement, Post agreed to service Alliance's clients in the greater Denver area, and to devote his "full time and best efforts, talents, knowledge, and experience" to providing such service.

29. Under the Agreement, Alliance agreed to pay Post wages/compensation consisting of:

    A. A "draw salary" calculated as 45% of all administrative fees (the money charged to Alliance clients) generated by Post, less applicable expenses; and

    B. A "bonus incentive award" calculated as 45% of all administrative fees generated by Post during the 12 months before the Agreement was

       terminated, provided that the fees generated in the 12 months following the termination of the Agreement do not fall below the fees from the prior 12 months.

Ex. 1 ¶¶ 4-5.

30. Mapes sold Alliance to Vensure on December 31, 2022.

31. Based on his conversations with the management of Alliance and Vensure, Post understands that in purchasing Alliance, Vensure also assumed its wage obligations.

32. On January 2, 2022, Mapes told Post that he had sold Alliance to Vensure and that the Agreement was "terminated."

33. The termination of the Agreement between Post and Alliance triggered the Defendants' obligation to pay Post an "incentive bonus award."

34. At all times relevant to this Complaint, Post performed his job duties in accordance with the Agreement.

35. Post generated huge amounts of money for Alliance throughout the 11 years that it was owned by Mapes, and continues to do so as an employee of Vensure.

36. At all times relevant to this Complaint, Post worked for the Defendants in Colorado.

37. In August 2022, Post became concerned that Mapes had paid him less than the full draw salary to which he was owed for several years, and possibly throughout his employment with Alliance. He contacted the Chief Financial Officer of Alliance, Jane Dineen ("Dineen"), and asked her to reconcile his administrative fees with his pay.

38. Dineen apparently did so, and told Post that she found some records that

she found that seemed "inaccurate" and were "troublesome."

39. Based on his conversation with Dineen, Post reviewed the information to which he had access and was able to estimate that his draw salary was short by approximately $9,065.00 in 2019; his draw salary was short by approximately $11,920.00 in 2020; and his draw salary was short by $16,228.00 in 2021.

40. As stated previously, the "termination" of the Agreement between Post and Alliance on January 2, 2022 triggered the Defendants' obligation to pay Post an "incentive bonus award." *See* **Exhibit 1 ¶ 5**.

41. In accordance with the Agreement, Post generated fees during 2022 that were equal to or greater than the fees generated for 2021, thus complying with the final condition to receive his bonus.

42. Based on the administrative fees he generated for Alliance in 2021, Post was and is entitled to an incentive bonus award of $215,228.00.

43. In February 2022, Mapes sent Post a letter stating that he had calculated Post's bonus as $150,487, that he was paying Post $40,000.00 in 2022, that he would pay Post "$40,000.00 next February," and the balance in February 2024. Mapes enclosed a check for $40,000.00 with the letter.

44. Because Post earned a bonus of $215,228.00, Mapes' payment plan will result in an underpayment of $64,741.00.

45. On September 9, 2022, Post sent an e-mail to Shea Compton ("Compton"), Vensure's Assistant Vice President of Employee Experience, stating:

> Shea -
>
> I am writing in regard to several serious issues that need to be addressed immediately by Vensure.
>
> First, I have not been paid all of the wages and compensation I earned under our agreements, and that I am due under the Colorado Wage Act. I have discussed this issue numerous times with my managers, to no avail. I am not currently in possession of all of the information necessary to know precise numbers (Vensure should have all of that), but from what I do know: I was shorted commissions of approximately $9,065.00 in 2019; I was shorted commissions of $11,920.00 in 2020; and I was shorted commissions of $16,228.00 in 2021. In addition, I have not been paid my earned incentive bonus of $115,000.00, and a bonus of $45,000.00 for the Vivax Pros account that closed prior to the termination of my prior agreement. In total, Vensure owes me wages and compensation of at least $197,213.00. I am requesting that this amount be paid within the next 14 days, as required by the Colorado Wage Act.
>
> Second, I wanted to make sure that you are fully aware of the constant retaliation I have been experiencing since June of this year, when I alerted Vensure to the insurance fraud that was committed by Carolina Mapes. Since I made that report, Carolina and Mike have stonewalled and directly undermined my work. They have refused to provide me with necessary information, and have come to Colorado to meet with my clients without my participation or consent. For some reason, Vensure has joined in this retaliation, creating a false narrative regarding my job performance and threatening me with a performance improvement plan when I am doing everything I was instructed to do earlier this year. I believe this retaliation is illegal and needs to cease.
>
> Thank you for your time and attention to these important matters.

46.     On September 16, 2022, Compton responded to Post's e-mail by telling him that she was working with Dineen and they were "able to get numbers from 2021 and 2020" but were "held up" because the software containing prior records was "too slow."

47.     Compton later admitted that some of the data needed to calculate his draw salary was "missing" and that some of the folders that should have contained such data

were "empty."

48. Based on Compton's statements, Post does not believe that the Defendants maintained complete and accurate records of all of the wages he earned or how he was paid.

49. On September 29, 2022, Compton suddenly sent Post an e-sign document entitled "Vensure Non-Solicitation Agreement," along with a message stating that signing the document was "a requirement for continued employment."

50. A copy of the agreement sent by Compton to Post on September 29, 2022 is attached hereto as **Exhibit 2**.

51. The agreement presented to Post would have required him to agree to:

   A. Refrain from any action that might "induce or cause" a Vensure customer to terminate or "change" their business relationship with Vensure for two years after Post's termination;

   B. Refrain from referring any Vensure customer to any "individual, corporation, limited liability company, partnership, association, group, or other entity" other than Vensure for two years after Post's termination;

   C. Refrain from "soliciting, encouraging, or attempting to hire" any Vensure employee, "assisting any person" to hire a Vensure employee, or "inducing or causing" any Vensure employee to leave Vensure for two years after Post's termination;

52. The agreement would also have required Post to agree to pay Vensure a

9

kickback equal to 10% of the salary he was paid during his employment with Vensure if he violated the restrictive covenant.

53. On October 4, 2022, Post's undersigned counsel sent Compton a demand letter seeking immediate payment of Post's salary and bonus.

54. Compton confirmed receipt of the demand letter on October 4, 2022.

55. On October 13, 2022, Vensure Regional Vice President Curtis Denton ("Denton") and Vice President of Sales Boris Sokolsky ("Sokolsky") met with Post.

56. During the meeting, Denton told Post that he was going to be "transitioned" from being an employee of Vensure to a "channel partner" (i.e., a non-employee who would not receive a salary).

57. Post told Denton that he was not interested in doing anything different from the job he is currently performing.

58. Post asked Denton and Sokolsky when he was going to be "transitioned," to which Denton replied, "soon."

59. Post told Denton and Sokolsky that he believed he had outproduced the quota that was given to him, and that he wanted to be paid the wages and compensation owed to him to date. Denton responded, "can't you just trust that we'll do that?"

60. To date, none of the Defendants have tendered any of the wages and compensation demanded by Post in his September 9, 2022 e-mail or his counsel's October 4, 2022 demand letter.

61. Through this Complaint, Post demands that the Defendants immediately pay him the wages and compensation currently owed to him, owed to him under the

Agreement, which to date is $37,252.00, and that Vensure also pay him statutory penalties of 36,377.50.[2]

62. At all times relevant to this Complaint, the Defendants knew, or through the exercise of diligence should have known, that the CWA required them to pay Post all of his wages and compensation in a timely manner. As such, the Defendants' failure to pay Post the wages/compensation due to him was willful.

## COUNT I

### WAGE THEFT IN VIOLATION OF THE COLORADO WAGE ACT

### C.R.S. § 8-4-101 *et seq.*

### *Against All Defendants*

63. Post incorporates the allegations in the paragraphs above as if fully set forth herein.

64. The CWA requires employers to pay all "wages" and "compensation" earned in a timely manner. C.R.S. § 8-4-103(a)(1).

65. Under the CWA, "wages" or "compensation," expressly include "bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." C.R.S. § 8-4-101(14)(a)(II); *see Rohr v. Ted Neiters Motor Co.*, 758 P.2d 186, 188 (Colo. App. 1988) (bonus was "wages"

---

[2] *See Damitio v. Sushi Zanmai Inc.*, No. 12-cv-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013) (recognizing that civil complaint may be a "written demand" under the CWA); *Fracasse v. Ablaze Energy*, No. 15-cv-2192-WJM-NYW, 2016 WL 8577551, at *4 (D. Colo. July 1, 2016) (same); *Latham v. High Mesa Commc'ns*, No. 17-cv-2118-JLK-GPG, 2020 WL 1317421, at *7–8 (D. Colo. Jan. 13, 2020), *report and recommendation adopted*, No. 17-cv-02118-JLK-GPG, 2020 WL 1626976 (D. Colo. Feb. 7, 2020) (same).

11

earned by sales employee, even though it was not yet payable at the time of his termination); *see also Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp.2d 1110, 1120 (D. Colo. 2013) (same); *see also Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 27 (holding that policy that purported to require forfeiture of earned wages based on employee's termination was void under C.R.S. § 8-4-121).

66. Employers who violate the CWA – and who continue to violate the Act by not paying earned wages within 14 days of receiving a demand for the payment of such wages – are liable for back wages, mandatory statutory penalties of 125% of any unpaid wages up to $7,500, statutory penalties of 50% of any unpaid wages over $7,500, and additional penalties of 50% of the statutory penalties owed if the violation was "willful," [3] reasonable attorneys' fees, and costs. C.R.S. §§ 8-4-109(3)(b), 109(3)(c), 110; *see Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶¶ 12-14 ("Under C.R.S. § 8–4–109(3)(b), penalties are mandatory if (1) the employee makes a written demand for payment and (2) the defendant does not pay within fourteen days").

67. In addition, an employee who prevails on a claim under the CWA is presumptively entitled to recover their reasonable attorney's fees and costs incurred in obtaining the unpaid wages. C.R.S. § 8-4-110; *see Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014).

---

[3] *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (holding that in order to establish that a violation was "willful," the employee must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute" and that "[t]he operative inquiry 'focuses on the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law'"); *see* 7 C.C.R. 1103-7:2.18 ("'Willful'…has the same meaning as under 29 U.S.C. § 255(a)").

68. At all times relevant to this Complaint, Post was an "employee" subject to the protections of the CWA. *See* C.R.S. § 8-4-101(5).

69. At all times relevant to this Complaint, Post worked for the Defendants in Colorado.

70. At all times since June 2011, Alliance has been Post's "employer" as defined by the CWA. *See* C.R.S. § 8-4-101(5).

71. At all times since January 1, 2022, Vensure has been Post's "employer" as defined by the CWA. *See* C.R.S. § 8-4-101(6).

72. Between January 1, 2020 and December 31, 2021, Mapes was also Post's "employer," as defined by the CWA, because he: (1) had the power to hire and fire employees; (2) supervised and controlled employees' work; (3) determined wage rates and methods of payment; and (4) maintained employee records. *See Inniss*, 385 F. Supp. 3d at 1167.

73. The Defendants violated the CWA by failing to pay Post all of the wages and compensation he earned through January 2022.

74. Alliance is currently liable for unpaid wages of $37,253.00, and may also be liable for statutory penalties, reasonable attorneys' fees, and costs under the CWA. *See* C.R.S. §§ 8-4-109(3); 8-4-110.

75. Mapes is liable for all wages and compensation that were not paid to Post for work performed from January 1, 2020 to December 31, 2021, and may also be liable for statutory penalties, reasonable attorneys' fees, and costs. *See id.*

76. Post sent written demands to Vensure in accordance with the CWA on

September 9, 2022 and October 4, 2022.

77. Vensure received Post's demands, but has not tendered any of the wages and compensation due.

78. Accordingly, Vensure is liable for wages and compensation of $37,253.00, statutory penalties under C.R.S. § 8-4-109(3), and Post's reasonable attorneys' fees and costs. *See id.*

## COUNT II

## PRESENTING A WORKER AN WITH UNLAWFUL RESTRICTIVE COVENANT IN VIOLATION OF SECTION 8-2-113

### C.R.S. § 8-2-113(7), (8)

*Against Vensure*

79. Post incorporates the allegations in the paragraphs above as if fully set forth herein.

80. Section 8-2-113 declares:

> Except as provided in subsections (2)(b) and (3) of this section, any covenant not to compete that restricts the right of any person to receive compensation for performance of labor for any employer is void.

C.R.S. § 8-2-113(2)(a).

81. This statute applies to any and all agreements and covenants that seek to limit a worker's ability to engage in the lawful occupation of their choice, including non-solicitation agreements. *See* C.R.S. 8-2-113(2)(d).

82. To be valid and enforceable in Colorado, a restrictive covenant must be "no broader than reasonably necessary to protect the employer's legitimate interest in

14

protecting trade secrets." *See id.*

83. Under Section 8-2-113, an employer may not "enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant not to compete that is void under" Section 8-2-113. *See* C.R.S. § 8-2-113(8)(a); *see also Home Buyers Warranty Corp. v. Gentry*, No. 120-cv-00395-RBJ-NRN, 2020 WL 6044303, at *6 (D. Colo. Oct. 13, 2020) ("Colorado law makes it plain that restrictive covenants that prevent employees from working are presumptively void").

84. The statute requires that any action regarding the enforceability of a restrictive covenant must be adjudicated in Colorado, and under Colorado law. *See* C.R.S. § 8-2-113(7).

85. On October 4, 2022, Vensure violated Section 8-2-113 by presenting Post with an agreement that is overbroad and oppressive on its face. **Exhibit 2**.

86. Vensure sought to compel Post to sign the agreement by instructing him that signing the document was "a requirement for continued employment."

87. When Post refused to sign the agreement, and informed Vensure that its actions violated Colorado law, Vensure informed Post that he would be "transitioned" to a non-employment relationship. As such, Post has been harmed by Vensure's violation of Section 8-2-113.

88. Post seeks a declaratory judgment finding that Vensure's presentation of the restrictive agreement is a violation of Section 8-2-113, $5,000.00 for the harm he has suffered to date as a result of the violation, and his reasonable attorney's fees and costs. *See* C.R.S. § 8-2-113(8)(b).

15

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully asks the Court to enter judgement in his favor and against the Defendants, and to:

A.  Enter a declaratory judgment finding that:

 1.  The Defendants' actions complained of herein violated the Colorado Wage Act; and

 2.  Defendant Vensure Employer Services, Inc. violated C.R.S. § 8-2-113 by presenting the Plaintiff with an unlawful restrictive covenant;

B.  Award the Plaintiff:

 1.  Back wages in an amount to be determined at trial;

 2.  Mandatory statutory penalties under C.R.S. § 8-4-109(3)(b);

 3.  Additional penalties under C.R.S. § 8-4-109(3)(c);

 4.  A penalty of $5,000.00 for Vensure's violation of C.R.S. § 8-2-113; and

 5.  Reasonable attorney's fees and costs; and

C.  Award all other and further relief that the Court finds to be equitable and just.

## JURY DEMAND

The Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 4th day of November, 2022.

/s/ Adam M. Harrison
_____
Claire E. Hunter
Adam M. Harrison
HKM Employment Attorneys LLP
730 17th Street, Suite 750

Denver, Colorado 80202
720.255.0370
chunter@hkm.com
aharrison@hkm.com

*Counsel for the Plaintiff*

17